UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOAN OCHEI,

                        Plaintiff,

        -against-

THE MARY MANNING WALSH NURSING HOME           10-CV-2548 (CM)(RLE)
COMPANY, INC., CATHOLIC HEALTH CARE
SYSTEM d/b/a/ ARCHCARE AT MARY MANNING
WALSH HOME, LUCAS DEDRICK, LOUIS SAMPT
AND RICHARD BISCOTTI

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

FACTS ................................................................................................................... 2

STANDARD OF REVIEW .................................................................................... 4

ARGUMENT ......................................................................................................... 6

POINT I     PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW ....... 6

     A.   Plaintiff Did Not Engage In Any "Protected Activity" Under The
          Law Upon Which Her Retaliation Claims Can Be Based ............................ 7

     B.   Plaintiff Did Not Suffer Any Adverse Action Because Of Her
          Protected Activity ....................................................................................... 10

     C.   Plaintiff Is Precluded From Introducing Evidence Of Her
          Alleged Protected Activity ......................................................................... 13

     D.   Plaintiff's Retaliation Claims Must Be Dismissed As Against
          The Individual Defendants ......................................................................... 14

POINT II    PLAINTIFF'S FLSA CLAIMS MUST BE DISMISSED ..................................... 15

POINT III   PLAINTIFF'S CONTRACT CLAIMS MUST BE DISMISSED ......................... 18

     A.   Plaintiff's Breach Of Contract Claim Necessarily Fails And Must Be
          Dismissed .................................................................................................... 19

     B.   Plaintiff's Unjust Enrichment Claim Must Be Dismissed ............................ 22

     C.   Plaintiff's Claim For Breach of The Implied Covenant Of Good Faith
          And Fair Dealing Must Be Dismissed ........................................................ 23

CONCLUSION ...................................................................................................... 25

### TABLE OF AUTHORITIES

Page

STATUTES

New York Limited Liability Company Law § 609(a) ................................................................. 19


CASES

*Abbondanzo v. Health Mgmt. Sys.*,
    2001 WL 1297808 (S.D.N.Y. 2001) ................................................................. 12

*AJW Partners, LLC v. Cyberlux Corp.*,
    2008 N.Y. Misc. LEXIS 5854 (Sup. Ct. New York County 2008) ........................................ 23

*Alverez v. United Parcel Serv.*,
    398 F. Supp. 2d 543 (N.D. Tex. 2005) ................................................................. 9

*Apfel v. Prudential-Bache Sec., Inc.*,
    81 N.Y.2d 470, 600 N.Y.S.2d 433 (1993) ................................................................. 23

*Atlantic Gas & Wash LLC v. 3170 Atl. Ave. Corp.*,
    2012 N.Y. Misc. LEXIS 5349. (Sup. Ct. New York County 2012) ................................ 19, 24

*Avedisian v. Quinnipiac Univ.*,
    2010 U.S. App. LEXIS 14977 (2d Cir. 2010) ................................................................. 5

*Blanc v. Sagem Morpo, Inc.*,
    2010 WL 3836155 (2d Cir. 2010) ................................................................. 5

*Bryant v. Verizon Comms. Inc.*,
    550 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................. 7

*Callahan v. Bancorpsouth Ins. Services of Mississippi, Inc.*,
    244 F. Supp. 2d 678 (S.D. Miss. 2002), *aff'd*, 61 Fed. Appx. 121 (5th Cir. 2003) .................. 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................. 4, 5

*Collette v. St. Luke's Roosevelt Hosp.*,
    2002 WL 31159103 (S.D.N.Y. 2002) ................................................................. 13

*Corsello v Verizon N.Y., Inc.*,
    18 N.Y.3d 777, 944 N.Y.S.2d 732 (2012) ................................................................. 23

95467.2 12/14/2012

*Covello v. Depository Trust Co.,*
    212 F. Supp. 2d 109 (E.D.N.Y. 2002) ............................................................... 5

*DeWitt v. Lieberman,*
    48 F. Supp. 2d 280 (S.D.N.Y. 1999) ............................................................... 15

*Dister v. Continental Group, Inc.,*
    859 F.2d 1108 (2d Cir. 1988) ......................................................................... 5

*EBC 1, Inc. v Goldman Sachs & Co.,*
    5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005) ........................................................ 23

*Fiore v. Fairfield Bd. of Educ.,*
    2009 U.S. Dist. LEXIS 79676 (D. Conn. 2009) .............................................. 5

*Forrest v. Jewish Guild for the Blind,*
    3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004) ........................................................ 6

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,*
    136 F.3d 276 (2d Cir. 1998) ......................................................................... 10

*Garner v. Motorola, Inc.,*
    95 F. Supp. 2d 1069 (D. Ariz. 2000) ............................................................... 9

*Gourdine v. Cabrini Med. Ctr.,*
    307 F. Supp. 2d 587 (S.D.N.Y. 2004) .......................................................... 6, 7

*James v. Newsweek, Inc.,*
    2000 U.S. App. LEXIS 8805 (2d Cir. 2000) ................................................. 10

*James-Gray v. Hanes Hosiery, Inc.,*
    1998 WL 525819 (S.D.N.Y. 1998) ............................................................... 12

*Kamrowski v. Morrison Mgmt. Specialist,*
    2010 U.S. Dist. LEXIS 103290 (S.D.N.Y. 2010) ............................................ 9

*Lewis v. Triborough Bridge and Tunnel Auth.,*
    2001 WL 46986 (S.D.N.Y. 2001) ................................................................. 15

*Lobosco v. New York Tel. Co./NYNEX,*
    96 N.Y.2d 312, 727 N.Y.S.2d 383 (2001) ..................................................... 21

*Maas v. Cornell Univ.,*
    94 N.Y.2d 87, 699 N.Y.S.2d 716 (1999) ....................................................... 21

*Manoharan v. Columbia Univ. College of Physicians & Surgeons,*
    842 F. 2d 590 (2d Cir. 1988) ......................................................................... 8

*Martin v. MTA Bridges & Tunnels*,
    2008 U.S. Dist. LEXIS 54775 (S.D.N.Y. 2008) (McMahon, J.)............................15

*Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................5

*Meri v. Dacon*,
    759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985)..........................................6

*Meyer v. William Floyd Union Free Sch. Dist.*,
    2009 WL 3327208 (E.D.N.Y. 2009) ....................................................................12

*Mun v. Univ. of Alaska*,
    291 Fed. Appx. 115, 2008 WL 3925858 (9th Cir. 2008) ...........................................9

*Nakamura v. Fujii*,
    253 A.D.2d 387, 677 N.Y.S.2d 113 (1st Dep't 1998)...............................................22

*Nemani v. United Health Servs.*,
    170 A.D.2d 782, 565 N.Y.S.2d 877 (3d Dep't 1991)...............................................23

*Ochei v. All Care/Onward Healthcare*,
    2009 U.S. Dist. LEXIS 28993 (S.D.N.Y. 2009)......................................................1

*Ochei v. Coler/Goldwater Mem'l Hosp.*,
    450 F. Supp. 2d 275 (S.D.N.Y. 2006) ...................................................................1

*Ochei v. Helene Fuld Coll. of Nursing of North General Hosp.*,
    22 A.D.3d 222, 802 N.Y.S.2d 28 (1st Dep't 2005)...................................................1

*Ochei v. The Mary Manning Walsh Home Co.*,
    2011 U.S. Dist. LEXIS 20542 (S.D.N.Y. 2011) (McMahon, J.)..................................1

*Parker East 67th Associates, L.P., v. Minister, Elders
& Deacons of Reformed Protestant Dutch Church of City of New York*,
    301 A.D.2d 453, 754 N.Y.S.2d 255 (1st Dep't), *appeal denied*,
    100 N.Y.2d 502, 760 N.Y.S.2d 765 (2003).........................................................25

*Rivera v. Prudential Ins. Co. of Am.*,
    1996 WL 637555 (N.D.N.Y. 1996) ....................................................................15

*Romanello v. Intesa Sanpaolo S.P.A.*,
    97 A.D.3d 449, 949 N.Y.S.2d 345 (1st Dep't 2012) ...............................................13

*Ryan v. Kellogg Partners Institutional Servs.*,
    19 N.Y.3d 1, 945 N.Y.S.2d 593 (2012) ...............................................................21

95467.2 12/14/2012

*Sanchez-Vazquez v. Rochester City Sch. Dist.*,
   2012 WL 2856824 (W.D.N.Y. 2012) ...................................................................15

*Saqib v. Stein Devisser & Mintz, PC*,
   2010 U.S. App. LEXIS 12188 (2d Cir. 2010) ..........................................................8

*Scibilia v. Verizon Communications, Inc.*,
   2012 U.S. App. LEXIS 18292 (2d Cir. 2012) ...................................................5, 13

*Suriel v. Dominican Repub. Educ.*,
   85 A.D.3d 1464, 926 N.Y.S.2d 198 (3d Dep't 2011)................................................7

*Weir v. Holland & Knight, LLP*,
   2011 N.Y. Misc. LEXIS 6422 (Sup. Ct. New York County 2011) ......................6, 7

*Whitfield v. Imperatrice*,
   2012 U.S. App. LEXIS 8672 (2d Cir. 2012) ..........................................................13

*Ying Jing Gan v. City of New York*,
   996 F.2d 522 (2d Cir. 1993) .....................................................................................5

95467.2 12/14/2012

## PRELIMINARY STATEMENT

The Amended Complaint filed by *pro se* Plaintiff Joan Ochei ("Plaintiff")[1] asserts a total of nineteen separate causes of action against Defendants The Mary Manning Walsh Nursing Home Company, Inc., Catholic Health Care System d/b/a/ Archcare at Mary Manning Walsh Home ("MMWH"), Lucas Dedrick, Louis Sampt and Richard Biscotti.  However, by decision and order dated March 1, 2011, reconsideration of which was denied over Plaintiff's request (ECF Document No. 40), this Court dismissed many of Plaintiff's claims against MMWH, Mr. Dedrick and Mr. Biscotti, and dismissed the Amended Complaint in its entirety as against Mr. Sampt.  *See Ochei v. The Mary Manning Walsh Home Co.*, 2011 U.S. Dist. LEXIS 20542 (S.D.N.Y. 2011)(McMahon, J.).

Consequently, Plaintiff's only remaining claims against MMWH are for:  (i) alleged retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Laws ("NYCHRL") (*i.e.*, the 10th, 11th and 12th Causes of Action); (ii) alleged unpaid wages under the Fair Labor Standards Act ("FLSA") (*i.e.*, the 13th and 14th Causes of Action); and (iii) alleged breach of contract claims relating to her claim that she was not paid wages she believes she was due (*i.e.*, the 16th, 17th and 18th Causes of Action).  Such claims are also the only claims that remain against Mr. Dedrick and Mr. Biscotti, with the exception of the Title VII retaliation claim (*i.e.*, the 10th Cause of Action) which was already dismissed as against them.

---

[1] Although Plaintiff is *pro se*, she is no stranger to litigation.  As Plaintiff admitted in her deposition, in addition to the instant case, Plaintiff has brought "quite a number of cases" wherein which she asserted various discrimination and wage and hour claims against her prior employers.  (Ochei Dep. 8); *see, e.g., Ochei v. All Care/Onward Healthcare*, 2009 U.S. Dist. LEXIS 28993 (S.D.N.Y. 2009) (granting summary judgment to Plaintiff's former employer dismissing claims of gender and national origin discrimination under Title VII, the NYSHRL and NYCHRL); *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275 (S.D.N.Y. 2006) (granting summary judgment to defendant on Plaintiff's Title VII action for discrimination based on race, national origin and gender, and for hostile work environment); *Ochei v. Helene Fuld Coll. of Nursing of North General Hosp.*, 22 A.D.3d 222, 802 N.Y.S.2d 28 (1st Dep't 2005) (dismissing Plaintiff's complaint alleging she was wrongfully terminated from her nursing college).

It must also be noted that pursuant to this Court's order of August 2, 2012 (ECF Docket No. 91), the Plaintiff is "precluded from offering evidence on the matters comprehended by the [Defendants'] interrogatories" in opposition to this motion or at trial because she failed to respond to Defendants' discovery demands. (*See* Satriano Aff. Exs. J; *see id.* at ¶¶ 8-11).

This memorandum of law is submitted in support of Defendants' MMWH, Dedrick and Biscotti's (collectively referred to as "Defendants") motion for summary judgment. For the reasons discussed herein, Plaintiff's remaining claims must be dismissed.

## FACTS

ArchCare is a non-profit healthcare organization guided by the Archdiocese of Greater New York that owns and operates a number of healthcare facilities in or about the New York City area. (Hill Aff. ¶ 1). One such health care facility is the Mary Manning Walsh Home nursing home. (*Id.* at ¶ 3). MMWH is a non-profit, 362 bed resident care facility that provides long-term care and short-term rehabilitation to the elderly and the infirm. (*Id.*).

On or about April 24, 2006, ArchCare hired Plaintiff—a 53-year old, Black female from the Ibo ethnic tribe in Nigeria (Ochei Dep. 5)—to work full-time as a Licensed Practical Nurse ("LPN") at MMWH. (Hill Aff. ¶ 4). Plaintiff continued to be employed in this capacity until her employment was terminated effective December 3, 2007. (*Id.*). At no point during Plaintiff's employment did ArchCare or any other entity enter into a written contract of employment with Plaintiff. (*Id.* at ¶ 7). At all times during her employment, Plaintiff was paid at the wage rate agreed to by her and ArchCare for her to work as an LPN. (Ochei Dep. 169).

As an LPN, Plaintiff's job duties were limited to those tasks that an LPN is authorized to do by virtue of the license issued to her by New York State. (Hill Aff. ¶ 6). If Plaintiff had performed work outside the scope of her LPN license, she had no authorization to do so. (*Id.*).

Plaintiff's disciplinary record while employed at MMWH was far from stellar. Not long after Plaintiff was hired, ArchCare/MMWH began receiving numerous complaints against Plaintiff

relating to her mistreatment of MMWH residents and staff.  (Hill Aff. ¶ 10).   In mid-November 2006, for example, MMWH received a complaint from a Certified Nurse's Aide ("CNA") who worked with Plaintiff, claiming that Plaintiff had accused the CNA of blocking her path with a linen cart.  (Hill Aff. ¶ 11, Ex. D).  To give another example, MMWH received another complaint on December 19, 2006 from a nursing supervisor that worked with Plaintiff claiming that Plaintiff had refused to work her assignment on the 8th floor of MMWH and abandoned the unit.  (*Id.* at ¶ 12, Ex. E).  Yet another complaint was received by MMWH on January 5, 2007 that Plaintiff refused to give medication to a resident in accordance with the prescribing doctor's order.  (*Id.* at ¶ 13, Ex. F).

Thereafter, on January 15, 2007, Plaintiff was suspended without pay for three days relating to what MMWH determined to be Plaintiff's unprofessional behavior toward another nurse and a nursing supervisor.  (Hill Aff. ¶ 14, Ex. G).  In connection with this suspension, Plaintiff was specifically warned: "You must work with your fellow co-workers in a professional manner without arguments.  Any other infractions will result in further disciplinary actions up to and including termination from MMWH."  (*Id.* at Ex. G).

Despite this warning, Plaintiff's chronic misconduct and inability to act in a professional manner towards co-workers continued unabated.  (*See* Hill Aff. ¶¶ 15-16, 18-20).  In fact, on July 9, 2007, a number of CNAs that worked with Plaintiff submitted a petition to MMWH management against her relating to what they characterized as Plaintiff's "continuous abusive and unprofessional behavior."  (*Id.* at ¶ 15, Ex. I).

Soon thereafter, on July 21, 2007, Plaintiff was again suspended without pay pending the completion of MMWH's investigation into various complaints, including those raised in the CNAs' petition and another complaint about Plaintiff taking pictures of and recording her co-workers without permission.  (*Id.* at ¶ 16, Ex. J).  Upon completion of the investigation, MMWH determined that Plaintiff had behaved in an inappropriate manner (*id.* at ¶ 16), and on August 21, 2007, Plaintiff

was suspended for twenty days without pay as a penalty for her behavior and issued the following

final warning:[2]

> You are receiving the following final warning:  your failure to meet the
> expectations noted above or any other infraction on your part will result in
> the termination of your employment at the Home.

(*Id.* at ¶ 16, Ex. K).

Just three months later, on December 3, 2007, ArchCare/MMWH received a written

complaint from the daughter of a MMWH resident about Plaintiff's mistreatment of the resident and

the resident's daughter on that day. (Hill Aff. ¶ 18, Ex. M).  The daughter alleged that on December

3, 2007, Plaintiff had refused to give the resident pain medication and that Plaintiff had slammed a

door in the daughter's face.   (*Id.*).   Upon receiving this complaint, MMWH undertook an

investigation into what occurred on December 3, 2007 and suspended Plaintiff without pay pending

completion of the investigation. (*Id.* at ¶ 19).  After completing this investigation, it was determined

that Plaintiff had, in fact, done what was stated by the daughter.  (*Id.*).

As a result of the final warning that had been issued to Plaintiff on August 21, 2007 and

Plaintiff's mistreatment of the MMWH resident and the resident's daughter on December 3, 2007,

Plaintiff's employment was terminated effective December 3, 2007.  (Hill Aff. ¶ 20, Ex. N).

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary

judgment when it is shown that "there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986).  In *Celotex*, the United States Supreme Court noted that "[t]he plain language

---

[2] Plaintiff subsequently grieved this twenty day suspension pursuant to the applicable grievance
procedure.  (Hill Aff. ¶ 17).  Although the basis for the suspension was upheld at all levels, the
suspension was ultimately reduced to a fifteen day unpaid suspension "based **solely** on the amount of
time the Home took to investigate the incidents which led to the disciplinary action." (*Id.* at ¶ 17,
Ex. L (emphasis in original)).  Notwithstanding this reduction, the final warning that was issued to
her on August 21, 2007 remained in full force and effect.  (*Id.*).

4

of Rule 56(c) mandates the entry of summary judgment ... against a party who fail[s] to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322.  In such a situation, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323-24; *accord Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988) ("The materiality of particular facts is determined solely by reference to substantive law applicable in the case ... a 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the non-moving party.").

In order to establish a genuine issue of material fact, a plaintiff "may not rely simply on conclusory statements or on contentions that the [evidence] supporting the motion [is] not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).  For example, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Covello v. Depository Trust Co.*, 212 F. Supp. 2d 109 (E.D.N.Y. 2002); *accord Scibilia v. Verizon Communications, Inc.*, 2012 U.S. App. LEXIS 18292, *6 (2d Cir. 2012) ("speculation … is insufficient to defeat summary judgment").  "Similarly, a plaintiff, as the nonmovant, may not rest 'upon the mere allegations or denials' in its complaint to demonstrate the existence of a genuine issue of material fact." *Fiore v. Fairfield Bd. of Educ.*, 2009 U.S. Dist. LEXIS 79676, *13 (D. Conn. 2009) *quoting* Fed. R. Civ. P. 56(e).  Simply put, "[c]onclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion."  *Blanc v. Sagem Morpo, Inc.*, 2010 WL 3836155, *1 (2d Cir. 2010).

As the Supreme Court has also made clear, a party opposing summary judgment "must do more than show that there is some metaphysical doubt as to material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Avedisian v. Quinnipiac*

*Univ.*, 2010 U.S. App. LEXIS 14977 (2d Cir. 2010) (a plaintiff "must point to more than a scintilla of evidence in support of her claim to defeat summary judgment"). To this end, the Second Circuit has held that, "[g]iven the ease with which [employment discrimination suits] may be brought and the energy and expense required to defend such actions," a party opposing summary judgment must present "concrete particulars" of discrimination. *Meri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985). This, the Plaintiff here cannot do. This case must be dismissed.

## ARGUMENT

### POINT I        PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW

In order to establish a retaliation claim under Title VII, a plaintiff must show that: "(1) the plaintiff was engaged in an activity protected by Title VII; (2) the employer was aware of [her] participation in the protected activity; (3) the employer took an adverse action against the plaintiff; and (4) there is a causal connection between the protected activity and the adverse action." *Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 597 (S.D.N.Y. 2004). The same elements must be proven to establish a retaliation claim under either the NYSHRL or NYCHRL—the only difference being that in proving element (1), the plaintiff would have to have engaged in protected activity under either the NYSHRL or NYCHRL, respectively. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004) (discussing the NYSHRL); *Weir v. Holland & Knight, LLP*, 2011 N.Y. Misc. LEXIS 6422, *12 (Sup. Ct. New York County 2011) (discussing the NYCHRL).

Plaintiff here purports to bring retaliation claims under Title VII, the NYSHRL and the NYCHRL—*i.e.*, her 10th, 11th and 12th Causes of Action, respectively. Plaintiff asserts that she was subjected to various adverse employment actions during her employment with MMWH and that her employment was ultimately terminated in December 2007 because of her alleged complaints about discrimination. All of Plaintiff's remaining retaliation claims must be dismissed.

**A.    Plaintiff Did Not Engage In Any "Protected Activity" Under The Law Upon Which Her Retaliation Claims Can Be Based**

First, Plaintiff's claims of retaliation under Title VII, the NYSHRL and the NYCHRL necessarily fail and must be dismissed because the undisputed evidence proves that Plaintiff did not engage in any "protected activity" under such statutes at any point during her employment.

It cannot be disputed that in order for an employee's complaint to be considered "protected activity" under Title VII, or the State or City Human Rights Laws for that matter, such complaint must relate to a violation of the specific law under which the plaintiff is asserting her retaliation claim. *See, e.g., Bryant v. Verizon Comms. Inc.*, 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (stating a plaintiff's "protected activity" must have been some action taken by the plaintiff "to protest or oppose *statutorily prohibited discrimination*" (emphasis added)).  For example, as Judge Marrero of this Court aptly stated in dismissing a *pro se* plaintiff's Title VII retaliation claim:

> In order for an employee's complaints to be a 'protected activity,' they must relate to alleged violation of Title VII, *i.e.*, the complaints must relate to race or gender [or other protected class]. Otherwise, any employee who is disgruntled or dissatisfied with any aspect of his or her employment would ultimately find relief in Title VII even when race or gender [or other protected class] was not at issue.

*Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 598 (S.D.N.Y. 2004) (dismissing pro se plaintiff's retaliation claims because the plaintiff's complaints "would not be a 'protected activity' within the ambit of Title VII... for which [the plaintiff] could have been subjected to unlawful retaliation.").  Similarly, in order for an employee's complaints to be considered "protected" activity under the NYSHRL and NYCHRL, such complaints must specifically relate to an alleged violation of those laws. *See, e.g., Suriel v. Dominican Repub. Educ.*, 85 A.D.3d 1464, 1467, 926 N.Y.S.2d 198 (3d Dep't 2011) (affirming dismissal of NYSHRL retaliation claim where plaintiff "did not show that [she] engaged in protected activity by 'opposing or complaining about unlawful discrimination' and therefore failed to establish a prima facie case of retaliation, making summary judgment proper" (internal citation omitted)); *Weir v. Holland & Knight, LLP*, 2011 N.Y. Misc.

LEXIS 6422, *12 (Sup. Ct. New York County 2011) ("The [New York] City [Human Rights] Law,

Administrative Code § 8-107(7), similarly prohibits retaliation … against any person on the ground,

among others, that the person has opposed or complained of a practice forbidden by the Code.")

In other words, in order to prove that she engaged in protected activity the Plaintiff must

demonstrate her opposition against something that is an "unlawful employment practice" covered by

the particular statutes under which she sues. *Manoharan v. Columbia Univ. College of Physicians &*

*Surgeons*, 842 F. 2d 590, 594 (2d Cir. 1988).  This Plaintiff cannot do.

Despite Plaintiff's conclusory assertions to the contrary, there is no proof that the Plaintiff

made any complaint about any alleged violation of Title VII, the NYSHRL, or the NYCHRL at any

time prior to her termination.  Indeed, none of the documents attached to Plaintiff's Amended

Complaint as so-called "evidence" of her claims that pre-date her termination actually evidence any

complaint of unlawful discrimination based on race or any other protected status under those laws.[3]

(*See generally* Amend. Comp. Exs.).  What such documents do show, however, are Plaintiff's

repeated complaints about:  (i) management issues and Mr. Sampt's management style—without

making any allegation tying Mr. Sampt's management of Plaintiff to her race or any other protected

status; and (ii) what Plaintiff believed to be MMWH's failure to pay her for overtime work.  But

complaints about workplace management or wages and hour matters do not constitute protected

activity under Title VII, the NYSHRL or NYCHRL.  *See, e.g., Saqib v. Stein Devisser & Mintz, PC*,

2010 U.S. App. LEXIS 12188 (2d Cir. 2010) (holding plaintiff's "allegations of discrimination for

the most part consist of ordinary workplace interactions, often with no indication of harassment of

---

[3] Plaintiff admitted that her alleged discrimination complaints would be contained within the documents attached to her Amended Complaint, as she testified at her deposition that "everything is in my exhibits.  I didn't hold anything back.  I sent everything with my Complaint" (Ochei Dep. 22; *accord id.* at 38), and she always documented her complaints in writing.  (*Id.* at 39 ("Some of my complaints were verbal complaints that I did internally.  I never filed – after filing, making my verbal complaints, most of the time I back it up with a written backup, with a written – *whatever I state verbally, I follow it up with in writing.*" (emphasis added)); *see id.* at 23 ("[I]t's not just my verbal statement, it's everything is documented.")).

any kind, and certainly no evidence that they related to his ethnicity or religion" were insufficient basis upon which to form a *prima facie* retaliation claim); *Kamrowski v. Morrison Mgmt. Specialist*, 2010 U.S. Dist. LEXIS 103290, *64-68 (S.D.N.Y. 2010) ("[T]he Court notes that many of Plaintiff's allegations of 'retaliation' involve complaints she made about non-actionable 'mismanagement' issues. … Because Title VII does not protect employees from retaliation for opposing misbehavior of co-workers or supervisors that is unrelated to discrimination on account of one of the protected classes, these claims lack merit."); *Mun v. Univ. of Alaska*, 291 Fed. Appx. 115, 2008 WL 3925858 (9th Cir. 2008) (employee's complaints of overtime pay disparities that did not mention alleged discrimination or Title VII were not protected activities under Title VII); *Callahan v. Bancorpsouth Ins. Services of Mississippi, Inc.*, 244 F. Supp. 2d 678, 683-84 (S.D. Miss. 2002) ("the plaintiff's complaint to her employer [about wages] was not a statutorily protected expression sufficient to support her Title VII retaliation claim" because the complaint did not "sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner" under Title VII), *aff'd*, 61 Fed. Appx. 121 (5th Cir. 2003); *Alverez v. United Parcel Serv.*, 398 F. Supp. 2d 543, 551-52 (N.D. Tex. 2005) (finding that an employee failed to present a prima facie case of retaliation where the employee never mentioned racial discrimination in an altercation with the employer, challenging the supervisor's refusal to pay him for a half hour of work); *Garner v. Motorola, Inc.*, 95 F. Supp. 2d 1069, 1078 (D. Ariz. 2000) ("Complaints about salary underpayment which are not based on unlawful unemployment practices proscribed by Title VII are not 'protected activities' within the meaning of Title VII's retaliation provisions.").

In fact, Plaintiff's own prior sworn statement demonstrates that even Plaintiff does not believe she was subjected to retaliation based on any complaint she made about unlawful discrimination under either Title VII, the NYSHRL or NYCHRL. In the verified narrative Plaintiff submitted to the U.S. Equal Opportunity Commission prior to the instant litigation, she specifically states that the complaint she allegedly filed and for which she was retaliated against was "a

complaint of *unsafe work practice*" of another nurse. (Satriano Aff. Ex. E at p. 2, ¶ 4). Clearly such a complaint cannot be deemed protected activity under Title VII, or the State or City Human Rights Laws.

In short, the undisputed proof on this motion is that Plaintiff did not engage in any protected activity upon which her retaliation claims can be based. Plaintiff's retaliation claims thus fail as a matter of law and must be dismissed. *See, e.g., James v. Newsweek, Inc.*, 2000 U.S. App. LEXIS 8805, *3-4 (2d Cir. 2000) (affirming summary judgment to employer on Title VII retaliation claim for plaintiff's failure to engage in protected activity; "[Plaintiff] did not say—directly or indirectly— that she was being unfairly treated on account of her race, color, religion, sex, national origin or age. Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." (internal quotation omitted)); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998) (affirming summary judgment for employer because plaintiff's complaints were not "protected activity" within the meaning of Title VII where the complaints "did not state that [plaintiff] viewed [her boss'] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the employer] to understand that that was the nature of her objections").

**B.     Plaintiff Did Not Suffer Any Adverse Action Because Of Her Protected Activity**

Plaintiff's remaining retaliation claims must be dismissed for the additional reason that none of the adverse employment actions about which Plaintiff complains had anything to do with any of her protected activity. In fact, not only did MMWH have legitimate, non-discriminatory bases for all of the at issue adverse actions, but all of the complained of adverse actions occurred *before* Plaintiff engaged in any protected activity.

10

Plaintiff claims that in response to her alleged complaint about Mr. Sampt's alleged racial harassment,[4] she was "sent home around 1:00 am" on December 18, 2006 and was thereafter suspended without pay on three separate occasions and ultimately terminated effective December 3, 2007. (*See* Amend. Comp. ¶¶ 3-6). It is undisputed that Plaintiff was, in fact, suspended without pay on several occasions—once on January 15, 2007 for three days; again on July 21, 2007 pending completion of an investigation into complaints about Plaintiff's behavior, ultimately receiving a twenty day unpaid suspension on August 21, 2007 (*see* fn. 2 *supra*); and yet again on December 3, 2007 pending completion of an investigation into a complaint that the daughter of a MMWH resident had lodged against Plaintiff. (*See* 56.1 Stat. ¶¶ 18-19, 23, 25, 27-29, 34). It is also not disputed that on or about December 21, 2007, Plaintiff's employment was ultimately terminated effective December 3, 2007 as a result of the final warning that was issued to Plaintiff on August 21, 2007 and her conduct on December 3, 2007. (Hill Aff. ¶¶ 20-21, Ex. N; *see* Amend. Comp. ¶¶ 22, 258).

Fatal to Plaintiff's retaliation claims, however, is the fact that all of these adverse actions about which she complaints occurred *before* Plaintiff first engaged in any protected activity under Title VII, the NYSHRL or NYCHRL. (*See* Hill Aff. ¶¶ 23-25). Indeed, the final decision to terminate Plaintiff's employment was made on December 21, 2007, yet Plaintiff did not engage in any form of protected activity until almost three weeks later when, on January 9, 2008, Plaintiff contacted MMWH's Compliance and Corporate Ethics Hotline and complained of alleged race-based discrimination. (*See* Hill Aff. ¶ 24, Ex. P). Inasmuch as Plaintiff's employment was already terminated when she first engaged in such protected activity, it cannot be said that the decision to terminate her, any of her suspensions, or any other conceivable adverse action occurring during her employment was motivated in any way by retaliatory animus. Plaintiff's remaining retaliation claims

---

[4] This Court dismissed all of Plaintiff's harassment/hostile work environment claims in its March 1, 2011 decision and order stating, "[P]laintiff has not pleaded a single fact tending to show any connection between these incidents [of alleged harassment] and her race, national origin or age." (Satriano Aff. Ex. D at 8).

must therefore be dismissed. *See, e.g., Abbondanzo v. Health Mgmt. Sys.*, 2001 WL 1297808 (S.D.N.Y. 2001) (dismissing retaliation claim where alleged retaliatory conduct took place prior to protected activity); *Meyer v. William Floyd Union Free Sch. Dist.*, 2009 WL 3327208 (E.D.N.Y. 2009) (same); *James-Gray v. Hanes Hosiery, Inc.*, 1998 WL 525819, *12 (S.D.N.Y. 1998) (dismissing retaliation claim; "This conduct cannot be deemed retaliatory, however, because the conduct began at least two months before [plaintiff] even filed her charge.").

Moreover, as discussed in detail in the accompanying Affidavit of Peter F. Hill, MMWH had legitimate, non-discriminatory reasons to suspend Plaintiff on each of these occasions and to ultimately terminate her employment—namely, Plaintiff's chronic inability to conduct herself in a professional manner. (*See* Hill Aff. ¶¶ 10-22, Exs. D-O). For example, Plaintiff's suspension on January 15, 2007, was the result of her unprofessional behavior toward another nurse and a nursing supervisor. (Hill Aff. ¶ 14, Ex. G). The July 21, 2007/August 21, 2007 suspension and related final written warning[5] issued to Plaintiff similarly stemmed from the substantiated complaints about Plaintiff's mistreatment of CNAs raised in the petition filed against Plaintiff and that Plaintiff had been taking pictures of and recording her co-workers. (*Id.* at ¶¶ 15-16, Exs. I-K). The December 3, 2007 suspension resulted from the substantiated complaint that MMWH received from the daughter of a MMWH resident about Plaintiff's mistreatment of the resident and the daughter on that day. (Hill Aff. ¶¶ 18-19). Plaintiff was ultimately terminated as a result of her mistreatment of the resident and daughter and the final warning issued to Plaintiff on August 21, 2007. (Hill Aff. ¶ 20).

Just because Plaintiff may believe that "to [her], just it didn't make any – there is no logic to [her] termination," does not mean that retaliatory animus was the motivating factor for her termination. (Ochei Dep. 27). Plaintiff's rank speculation as to the reasons, or lack thereof, for her

---

[5] The written Final Warning and Suspension notice given to Plaintiff on August 21, 2007, Plaintiff was specifically advised that she was "receiving the following final warning: your failure to meet the expectations noted above or any other infraction on your part will result in the termination of your employment at the Home." (Hill Aff. ¶ 16, Ex. K).

termination is not a substitute for the facts of what occurred, and is patently insufficient to overcome the instant motion. *Scibilia v. Verizon Communications, Inc.*, 2012 U.S. App. LEXIS 18292, *6 (2d Cir. 2012) ("speculation … is insufficient to defeat summary judgment"); *Whitfield v. Imperatrice*, 2012 U.S. App. LEXIS 8672, *6 (2d Cir. 2012) ("[Plaintiff's] arguments appear to be based solely on his own speculation, which is insufficient to defeat a summary judgment motion.").

Because the adverse actions about which Plaintiff complains were not motivated by or based on any protected activity engaged in by Plaintiff, all of her remaining retaliation claims must be dismissed. *See, e.g., Collette v. St. Luke's Roosevelt Hosp.*, 2002 WL 31159103, *11 (S.D.N.Y. 2002) (dismissing Title VII retaliation claim where plaintiff was not promoted for reasons unrelated to plaintiff's protected activity); *Romanello v. Intesa Sanpaolo S.P.A.*, 97 A.D.3d 449, 454, 949 N.Y.S.2d 345, 351 (1st Dep't 2012) (dismissing NYSHRL and NYCHRL retaliation claims challenging plaintiff's termination because plaintiff was terminated for reasons unrelated to any protected activity).

**C.   Plaintiff Is Precluded From Introducing Evidence Of Her Alleged Protected Activity**

Plaintiff's remaining retaliation claims must also be dismissed, as Plaintiff is precluded from introducing any evidence of her alleged protected activity in opposition to this motion or at trial.

As discussed in the August 2, 2012 letter previously submitted to this Court, despite Plaintiff having more than ample time and this Court's express order to do so, Plaintiff failed to submit a response to the Defendants' First Set of Interrogatories and First Set of Requests for the Production of Documents.[6] (Satriano Aff. ¶¶ 8-10, Exs. H-J). Consequently, that same day, in response to such letter, this Court held: "My preclusion Order has been effective. [Defendants] are free to move for summary judgment and *plaintiff will be precluded from offering evidence on the matters comprehended by the [Defendants'] interrogatories*." (*Id* at Ex. J (emphasis added)).

---

[6] As of the date of this memorandum of law, no response has been received from Plaintiff. (Satriano Aff. ¶ 11).

Plaintiff's remaining retaliation claims, and her alleged protected activity in particular, are clearly matters that are "comprehended by the [Defendants' interrogatories." Interrogatory Nos. 1, 2 and 3 each specifically relate to Plaintiff's alleged protected activity and supposed belief that her suspensions and termination were retaliatory:

> 1.  Identify any and all persons Plaintiff complained to about her employment being terminated and/or with whom Plaintiff discussed her employment being terminated…
>
> 2.  Identify any and all persons Plaintiff complained to about her employment being suspended and/or with whom Plaintiff discussed her employment being suspended…
>
> 3.  Identify any and all persons Plaintiff complained to about and/or with whom Plaintiff discussed her belief that she was being retaliated against…

(Satriano Aff. Ex. H at Ex. 2, Interrogatories ¶¶ 1-3).   The word "person" as used in the interrogatories is defined as being "any natural person or any business, legal, or governmental entity or association." (*Id.* at Ex. 2, Definitions ¶ 5).

Because Plaintiff has failed to respond to any of these Interrogatory Nos. 1, 2 or 3, she is precluded from submitting any evidence in support of her claims that either her termination or any of her suspensions were retaliatory.  Indeed, as Plaintiff has failed to respond to Interrogatory No. 3— relating to "her belief that she was being retaliated against"—Plaintiff is precluded from submitting any evidence in support of her belief that she was subjected to any retaliation at all.

**D.      Plaintiff's Retaliation Claims Must Be Dismissed As Against The Individual Defendants**

Finally, to the extent Plaintiff continues to assert any retaliation claim against individual Defendants Dedrick and Biscotti under the NYSHRL and NYCHRL,[7] such claims must be dismissed for all of those reasons discussed above.  (*See* Point I(A)-(B) *supra*).

Such claims must be dismissed for the additional reason that Dedrick and Biscotti cannot be held individually liable under either the State or City Human Rights Laws absent a finding of

---

[7] Plaintiff's Title VII retaliation claims against the individual Defendants were dismissed by this Court's March 1, 2011 decision and order.  (Satriano Aff. Ex. D at 7, 13).

liability on the part of MMWH for retaliating against the Plaintiff. *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) ("An individual [defendant] could potentially be held liable under the [NYS]HRL and NYCHRL as an 'aider and abettor.' There is, however, a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor. … Accordingly, plaintiff cannot prevail against the [defendant] individually on her state and local claims unless she can first establish the liability of [the employer].") *citing Murphy v. ERA United Reality*, 251 A.D.2d 469, 471, 674 N.Y.S.2d 415 (2d Dep't 1998); *Lewis v. Triborough Bridge and Tunnel Auth.*, 2001 WL 46986, *1 (S.D.N.Y. 2001) ("Plaintiff must first establish that [the employer] committed a primary violation of the NY[S]HRL by encouraging, condoning, or approving discriminatory conduct on the part of [alleged aider and abettor]"). As set forth above, there can be no such finding of liability against MMWH. Plaintiff's remaining NYSHRL and NYCHRL retaliation claims against Dedrick and Biscotti must be dismissed. *Martin v. MTA Bridges & Tunnels*, 2008 U.S. Dist. LEXIS 54775 (S.D.N.Y. 2008) (McMahon, J.) (denying leave to amend complaint to assert NYSHRL and NYCHRL claims against individual defendants where no such claims could be maintained against the employer; "If the employer did not discriminate, there can be no … liability against an individual representative of the employer."); *Sanchez-Vazquez v. Rochester City Sch. Dist.*, 2012 WL 2856824, *6 (W.D.N.Y. 2012) (dismissing aiding and abetting claim where complaint failed to assert claim against employer because "[t]herefore there is no one for [plaintiff] to have aided and abetted in violating [the NYSHRL]"); *Rivera v. Prudential Ins. Co. of Am.*, 1996 WL 637555, *13 (N.D.N.Y. 1996) (granting summary judgment where plaintiff did not establish primary violation of the NYSHRL).

**POINT II     PLAINTIFF'S FLSA CLAIMS MUST BE DISMISSED**

Plaintiff's 13th and 14th Causes of Action assert claims under the FLSA. More specifically, by way of her 13th Cause of Action, Plaintiff asserts a claim based on Defendants' alleged "failure to pay sufficient overtime wages to the plaintiff and the Plaintiff Class." (Amend. Comp. ¶ 314).

Plaintiff's 14th Cause of Action purports to assert a class action claim for alleged unpaid wages on behalf of the "plaintiff class" made up of "[o]ther similarly situated employees" (*Id.* at ¶¶ 316-25).

As a threshold matter, to the extent Plaintiff's 13th Cause of Action relates to the "Plaintiff Class," and Plaintiff's 14th Cause of Action attempts to bring a class action FLSA claim, both causes of action must be dismissed. Not only has this case never been certified by the Court as a class action (*see generally* ECF Docket), but at her deposition Plaintiff admitted that the only wage claim she is pursuing in this lawsuit is for herself. (Ochei Dep. 164-68). In any event, because Plaintiff is not a lawyer and is proceeding *pro se*, she is not representing anyone other than herself and has no authority to bring a claim on behalf of anyone but herself. (Ochei Dep. 11, 164-65, 168). The "Plaintiff Class" portion of her 13th Cause of Action and the entirety of Plaintiff's 14th Cause of Action must therefore be dismissed.

To the extent Plaintiff's 13th Cause of Action asserts an FLSA claim on behalf of herself alone, it too must be dismissed. Plaintiff's claim is based on MMWH's alleged failure to pay her wages for time she claims to have worked. In her Amended Complaint, for example, Plaintiff alleges that she "routinely worked more than forty (40) hours per week for defendants" but that "defendants frequently refused to pay plaintiff for more than 37.5 hours per week."[8] (Amend. Comp. ¶¶ 302-03). However, Plaintiff has not produced any evidence during discovery in support of her FLSA claim and, pursuant to this Court's August 2, 2012 order, is precluded from introducing any such evidence going forward. (*See* Satriano Aff. ¶¶ 8-11, Exs. H-J).

The only "proof" relating to Plaintiff's FLSA claim obtained from Plaintiff during discovery was her deposition testimony that at some point in or about 2008 or 2009, the New York State Department of Labor and/or the U.S. Department of Labor (collectively the "DOL") investigated a complaint that she had made regarding MMWH's alleged failure to pay her wages. (*See* Ochei Dep.

---

[8] Plaintiff's claim is necessarily limited to those hours beyond the 37.5 hours per week she claims she worked but was allegedly not paid for. Plaintiff admits in her Amended Complaint that MMWH "paid Plaintiff for 37.5 hours per week." (Amend. Comp. ¶ 304).

148-53).   Apparently during the course of that investigation, the Plaintiff submitted "a lot of documents" to the DOL in support of her claim (Ochei Dep. 140, 146), yet Plaintiff has failed to produce any such documents during this litigation. (*See* Ochei Dep. 161-62, Ex. 8; fn. 9 *infra*).  As a result of the DOL's investigation, Plaintiff claims to have received one check for $250 and possibly a second check for $1,266.32 from MMWH and its affiliates for what the DOL determined was an underpayment to Plaintiff. (*See* Ochei Dep. 144, 146-47, 150, 156, Ex. 7).  The undisputed fact is, however, that MMWH did provide payment to the DOL, to be forwarded to the Plaintiff, of the entire amount the DOL determined was due to her. (Hill Aff. ¶¶ 28-29, Ex. U).

Moreover, pursuant to this Court's August 2, 2012 order, Plaintiff is precluded from introducing any evidence in support of her FLSA claim in opposition to this motion or at trial.  As discussed stated above, because Plaintiff failed to respond to the Defendants' discovery demands, this Court ordered that Plaintiff is "precluded from offering evidence on the matters comprehended by the [Defendants'] interrogatories." (Satriano Aff. Ex. J; *see* Point I(C) *supra*).  Plaintiff's FLSA claims are clearly matters that are "comprehended by the [Defendants'] Interrogatories."

Interrogatory No. 9 of the Defendants' First Set of Interrogatories requires Plaintiff to:

> Identify each and every person whom Plaintiff contends has knowledge of any matter(s) which is the basis of or may possess relevant information relating to any allegation set forth in the Complaint.

(Satriano Aff. Ex. H at Ex. 2, Interrogatories ¶ 9).  The word "Complaint" as used in Defendants' First Set of Interrogatories is specifically defined to mean "the Amended Complaint filed by Plaintiff in this Action (ECF Docket No. 13)." (*Id.* at Ex. 2, Definitions ¶ 1).  As mentioned above, the word "person" as used in the interrogatories is defined as being "any natural person or any business, legal, or governmental entity or association." (*Id.* at Ex. 2, Definitions ¶ 5).

Many allegations in the Amended Complaint obviously relate directly to Plaintiff's FLSA wage claim. (*See, e.g.*, Amend. Comp. ¶¶ 296-315).  Yet, in failing to respond to Interrogatory No. 9, Plaintiff has failed to identify those persons or entities that she contends have any knowledge or

information about any aspect of this claim. Plaintiff has not identified, for example, any person—not even herself—who has any knowledge or information about the specific instances when Plaintiff allegedly worked more than the 37.5 hours she admits she was paid for. Pursuant to this Court's August 2, 2012 preclusion order, Plaintiff is thus unable to introduce any evidence from *any source* about any matter related to her FLSA claim, which would include what hours Plaintiff claims she worked but was not paid for and anything else related thereto.[9]

Without proof of the hours Plaintiff claims she worked but for which she was not paid, Plaintiff cannot establish even a *prima facie* case of FLSA violation, and cannot prove her claim that the Defendants failed to pay her wages in accordance with the FLSA. Plaintiff's 13th Cause of Action for wages under the FLSA fails as a matter of law and must be dismissed.

## POINT III    PLAINTIFF'S CONTRACT CLAIMS MUST BE DISMISSED

Plaintiff has also asserted three separate state law contract claims all relating to her contention that she was not paid wages she believes she was due—specifically, claims for breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing (i.e., respectively her 16th, 17th and 18th Causes of Action).

---

[9] This Court's August 2, 2012 preclusion order states that Plaintiff is "precluded from offering evidence on the matters comprehended by the interrogatories," as opposed to the Defendants' interrogatories and document requests. (Satriano Aff. Ex. J). We nonetheless note that Plaintiff failed to respond to Document Request Nos. 1, 2, 4 and 18 of Defendants' First Set of Requests for the Production of Documents, all of which directly relate to Plaintiff's allegations that Defendants did not pay her the wages to which she claims she was entitled. Document Request No. 1 requires Plaintiff to produce: "All documents reflecting time actually worked by Plaintiff while employed by the Defendants including but not limited to work schedules or paystubs." (*Id.* at Ex. 3, Documents ¶ 1). Document Request No. 2 requires Plaintiff to produce: "All documents concerning compensation Plaintiff received while employed by the Defendants including but not limited to bank deposits or cancelled checks." (*Id.* at Documents ¶ 2). Document Request No. 4 requires Plaintiff to produce: "All documents concerning any communications, oral or written, between Plaintiff and the United States Department of Labor or New York State Department of Labor concerning Plaintiff's employment with the Defendants or any claim(s) made by her for compensation under the federal Fair Labor Standards Act or the New York State Labor Law." (*Id.* at Documents ¶ 4). Document Request No. 18 requires Plaintiff to produce: "Any and all documents concerning any loss of earnings … as a result of the conduct alleged in the Complaint." (*Id.* at Documents ¶ 18).

95467.2 12/14/2012

As a threshold matter, to the extent Plaintiff purports to assert any of her contract claims against individual Defendants Dedrick and Biscotti, her claims must be dismissed. "It is well settled that a contract claim against a corporation cannot be maintained against its individual officers, at least not without invoking the doctrine of piercing the corporate veil." *Atlantic Gas & Wash LLC v. 3170 Atl. Ave. Corp.*, 2012 N.Y. Misc. LEXIS 5349. *8 (Sup. Ct. New York County 2012) *citing Application of Brookside Mills (Raybrook Textile Corp.)*, 276 AD 357, 367, 94 N.Y.S.2d 509 (1st Dept 1950) *and* New York Limited Liability Company Law § 609(a). As Plaintiff here has failed to adduce any evidence to support veil piercing, her contract claims cannot be maintained against Dedrick or Biscotti.

In any event, all three of Plaintiff's state law contract claims must be dismissed as against MMWH, the institutional defendant, as well.

**A.    Plaintiff's Breach Of Contract Claim Necessarily Fails And Must Be Dismissed**

With regard to Plaintiff's breach of contract claim (*i.e.*, her 16th Cause of Action), Plaintiff asserts that the Defendants breached her employment contract by not paying her the wages she claims were due. (*See* Ochei Dep. 122-23 ("Q. And what was the contract that you allege was breached? / A. The employment contract between employer and the employee, as it is under -- by the law. I perform my services and I get paid for the service that I performed."). However, as discussed above, there is no evidence that Plaintiff is owed any additional money in unpaid wages, and Plaintiff is precluded from introducing evidence in support of her claim under this Court's August 2, 2012 preclusion order. (*See* Point II at 16-18 *supra*).

Plaintiff's breach of contract claim necessarily fails for the additional reason that she did not have any employment contract that was or even could have been breached by any of the Defendants. As attested to in the accompanying affidavit of Peter F. Hill, "[a]t no point during Plaintiff's employment—either at the time that she was hired or thereafter—did ArchCare (or any other entity) enter into a written contract of employment with Plaintiff." (Hill Aff. ¶ 7). Moreover, Plaintiff

admitted at her deposition that *if* she had an employment contract, it would have been attached as an exhibit to her Amended Complaint. (Ochei Dep. 133). No such contract was attached to her Amended Complaint, as no such contract exists. (Hill Aff. ¶ 7; *see generally* Amend. Comp. Exs.).

Plaintiff's deposition testimony demonstrates that the so-called employment contract upon which she bases her breach of claim is the general employee handbook that she received when she was first hired to work at MMWH. (*See* Ochei Dep. 126-27, Exs. 4-5). As Plaintiff testified:

> Q. … I'm talking about this kind of document, you know, like a contract. You know, like you have a contract to purchase a home or something, except this would dictate the terms of your employment, or it would set forth the terms of your employment.
>
> Do you recall a document like that that you signed and [a representative of MMWH] signed?
>
> A. I don't remember. It's been a long time ago. I don't remember.
>
> Q. Okay.
>
> A. I know I was given an employee handbook. I was given an employee handbook.
>
> *** 
>
> Q. … [T]ell me if I'm misquoting you here.
>
> You're claiming that the employment contract was that you applied for the job, you applied for the job, you were interviewed, you filled out certain paperwork that included an -- you know, verification of your employment status, you went for a physical by both the nursing home's doctor and I guess your doctor supplied some documents, and you also received a copy of the handbook, which you signed for that you had received it.
>
> And that -- those facts are what you believe constituted an employment contract between yourself and Mary Manning Walsh?
>
> A.        I know …

(Ochei Dep. 126-27).

But any reliance by Plaintiff on the MMWH employee handbook as a "contract" for employment is completely misplaced, as that handbook expressly and unambiguously states it is not an employment contract in any way:

> [T]his Handbook is not a contract of employment. Your employment is not for any specific period of time and may be terminated at your option or the Home's option. The Administration of the Home reserves the right to change or eliminate the policies covered by this Handbook or any other practice, program, plan or administrative guide from time to time as it deems appropriate.

(Hill Aff. Ex. B at 00265).  As the New York Court of Appeals has held:

> Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements. ... It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language.

*Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317, 727 N.Y.S.2d 383, 386 (2001).  Where, as here, the "employee handbook specifically disavows any intention on [the employer's] part to have its provisions integrated into [an] employment contract," such handbook does not impose any contractual obligations on the employer for which they can be held liable on a claim for breach of contract.  *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 13, 945 N.Y.S.2d 593, 600 (2012); *see Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93, 699 N.Y.S.2d 716, 720 (1999) (affirming dismissal of breach of contract claim; "While handbooks generally contain information concerning rights and responsibilities, the concept of handbooks as part of a contract with commitments and expectations on both sides" is not universally accepted. Thus, under these guidelines, we are not persuaded that any basis has been presented to support an attributed assent [by the employer] that the Campus Code was to be deemed a part of the employment contract with [the plaintiff].")

Because there simply is no employment contract upon which Plaintiff can base her breach of contract claim, her 16th Cause of Action must be dismissed.

95467.2 12/14/2012

**B.     Plaintiff's Unjust Enrichment Claim Must Be Dismissed**

Like her breach of contract claim, Plaintiff's 17th Cause of Action for alleged unjust enrichment too must be dismissed.

As a factual basis for this claim, Plaintiff again asserts MMWH's alleged failure to pay her wages that she claims to have earned. (Ochei Dep. 168 ("Common sense tells me unjust enrichment is that you're not paying me what I'm worth, you're not paying what -- that means my contract with you is an implied contract. You're not paying me what I deserve."). However, fatal to Plaintiff's claim is the fact that Plaintiff was employed to work at MMWH as an LPN (Hill Aff. ¶ 3) and she admitted at her deposition that at all times during her employment she was paid the wage rate she and MMWH agreed to for her to work in that capacity. (Ochei Dep. 169).

Apparently recognizing this defect in her claim, at her deposition Plaintiff proclaimed that the actual work she did was not the work of an LPN, but the work of a higher credentialed Registered Nurse ("RN"). (*See* Ochei Dep. 169-75, 180-85). However, Plaintiff has failed to adduce any evidence whatsoever to support this contention. Other than generally stating she worked on an "RN floor" at her deposition, Plaintiff has failed to even identify a single RN job duty that she allegedly performed. (Ochei Dep. 180-85). But even assuming, *arguendo*, Plaintiff's unsupported allegation was true, such work would have been outside the scope of what her LPN license permitted her to do. (Hill Aff. ¶ 6). Plaintiff was not authorized by MMWH to perform such work. (*Id.*).

In order to establish a "cause of action for unjust enrichment, a plaintiff must [prove] that [she] conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *Nakamura v. Fujii*, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113 (1st Dep't 1998). However, as cautioned by the New York Court of Appeals:

> [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.

*Corsello v Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732 (2012) (reversing lower court and dismissing unjust enrichment claim.

Inasmuch as it is undisputed that Plaintiff was paid wages in accordance with the rate she had agreed to work for (Ochei Dep. 169), Plaintiff's unjust enrichment claim necessarily fails and should be dismissed. *See Nemani v. United Health Servs.*, 170 A.D.2d 782, 565 N.Y.S.2d 877, 879-80 (3d Dep't 1991) (affirming dismissal of unjust enrichment claim where plaintiff was paid the salary agreed upon by plaintiff and his employer); *cf. Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 475, 600 N.Y.S.2d 433 (1993) ("Under the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value.").

**C.     Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Must Be Dismissed**

Plaintiff's 18th Cause of Action is for alleged breach of the implied covenant of good faith and fair dealing.  Like her other claims, this claim too must be dismissed.

"Implicit in every contract is a promise of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *AJW Partners, LLC v. Cyberlux Corp.*, 2008 N.Y. Misc. LEXIS 5854 (Sup. Ct. New York County 2008), *quoting Skillgames, LLC v. Brody*, 1 A.D.3d 247, 252 (1st Dep't 2003).  To assert a cause of action for breach of an implied covenant of good faith and fair dealing, a plaintiff must "adequately allege that the defendant injured the plaintiff's right to receive the benefits of the parties' agreement." *EBC 1, Inc. v Goldman Sachs & Co.*, 5 N.Y.3d 11, 22, 799 N.Y.S.2d 170 (2005).

Before any claim for breach of the implied covenant of good faith and fair dealing can be asserted, however, a plaintiff must first establish the existence of an actual contract into which such covenant is implied.  Where no contract between the parties exists, a claim for breach of the implied

covenant of good faith and fair dealing necessarily fails. *Atlantic Gas & Wash LLC v. 3170 Atlantic Avenue Corp.*, 2012 N.Y. Misc. LEXIS 5349 (Sup. Ct. Kings County Nov. 14, 2012) (dismissing claim for breach of implied covenant of good faith and fair dealing asserted against defendant because defendant did not have a contract with plaintiff). As discussed above, Plaintiff did not have any employment contract upon which she can base her covenant of good faith and fair dealing claim. (*See* Point III(A) *supra*). Such claim must be dismissed for this reason alone.

Moreover, at her deposition, Plaintiff explained that this claim is based on her belief that her wages were not paid at the same rate at which Registered Nurses were paid. (*See* Ochei Dep. 178-79). Plaintiff admitted, however, that the reason she was not paid at the RN rate was because she was not certified as an RN:

> … [T]he fact that they are very much aware of the fact that even though I'm an LPN, but my background tells a different story; that even though I'm LPN, I have more experience than the RNs that work in that facility.
>
> And, therefore, they are using me as an RN and paying me as an LPN. That's where the fair dealing. That's where the fair dealing is. They're not being fair.

(Ochei Dep. 180).

> Q.      But you're not certified by the state of New York as an RN.
>
> A.      Right, and I'm not certified as an RN …
>
> And they're aware of it, of the fact that I'm qualified as an RN, but they hired me as an LPN, yes; so therefore --
>
> Q.      They weren't aware that you were certified as an RN because you're not certified as an RN.
>
> A.      Because I'm not an RN.

(Ochei Dep. 179). Any claim by Plaintiff that MMWH was somehow unjustly enriched because she should have been paid to work as an RN even though she admittedly was not licensed as an RN is unavailing and should be rejected by this Court.

95467.2 12/14/2012

Finally, "where the claims made under the covenant of good faith and fair dealing are duplicative of the breach of contact claims, they will be dismissed." *See Parker East 67th Associates, L.P., v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of New York*, 301 A.D.2d 453, 454, 754 N.Y.S.2d 255 (1st Dep't), *appeal denied*, 100 N.Y.2d 502, 760 N.Y.S.2d 765 (2003). To the extent Plaintiff's good faith and fair dealing claim rests upon the same basis as her breach of contract claim (*i.e.*, her 16th Cause of Action), her claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *Id.* ("[Plaintiff] has not alleged any facts different from its breach of contract claim, and therefore cannot sustain a cause of action for breach of good faith and fair dealing.")

## CONCLUSION

For all of the foregoing reasons, the Defendant's motion for summary judgment should be granted and the 10th through 14th Causes of Action and the 16th through 18th Causes of Action asserted in the Amended Complaint should be dismissed.

Dated: New York, New York
   December 14, 2012

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: _____
  Ernest R. Stolzer (ES2242)
  Jessica C. Satriano (JS0981)
  BOND, SCHOENECK & KING, PLLC
  330 Madison Avenue, 39th Floor
  New York, New York 10017
  Telephone:  (646) 253-2300
  Facsimile:  (646) 253-2301
  estolzer@bsk.com; jsatriano@bsk.com

CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Joan Ochei, *Pro Se*
P.O. Box 1399
Madison Square Station
New York, New York 10159

Joan Ochei, *Pro Se*
317 West 45th Street
Apt. 420
New York, NY  10036

Ernest R. Stolzer (ES2242)
Jessica C. Satriano (JS0981)
BOND, SCHOENECK & KING, PLLC
330 Madison Avenue, 39th Floor
New York, New York 10017
Telephone:  (646) 253-2300
Facsimile:  (646) 253-2301
estolzer@bsk.com; jsatriano@bsk.com

95467.2 12/14/2012