UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOAN OCHEI,

                      Plaintiff,

-against-                                       **AFFIDAVIT OF**
                                                      **PETER F. HILL**

THE MARY MANNING WALSH NURSING HOME
COMPANY, INC., d/b/a ARCHCARE AT MARY       10-CV-2548 (CM)(RLE)
MANNING WALSH HOME, CATHOLIC HEALTH
CARE SYSTEM, LUCAS DEDRICK, LOUIS SAMPT
AND RICHARD BISCOTTI,

                      Defendant.
------------------------------------X
STATE OF NEW YORK    )
                            ) ss:
COUNTY OF NEW YORK )

        PETER F. HILL, being duly sworn deposes and says:

        1.    I am the Corporate Director of Human Resources for ArchCare, a non-profit healthcare organization guided by the Archdiocese of New York. I submit this affidavit based on my personal knowledge in support of the Defendants' motion for summary judgment.

        2.    I was promoted to my current position of Corporate Director of Human Resources for the ArchCare Health Care System in or about October 2009. Prior to my promotion, my positions had been Assistant Director of Labor Relations and Labor Relations Manager for ArchCare since 2005. In all of these positions, I have had supervisory responsibility for labor relations and human resources for ArchCare's facilities, including Mary Manning Walsh Nursing Home. My responsibilities in all of these positions included overseeing investigations of employee misconduct, determination and imposition of discipline when found to be warranted, handling grievances protesting such discipline, investigations of complaints of discrimination by employees, and employee complaints about payroll and payment of salary.

3.  ArchCare owns and operates a number of health care facilities throughout the Greater New York City area, including the Defendant Mary Manning Walsh Home ("MMWH") located in the Upper East Side of Manhattan. MMWH is a non-profit, 362 bed resident care facility that provides long-term care and short-term rehabilitation to the elderly and the infirm.

**Plaintiff's Employment**

4.  On or about April 24, 2006, ArchCare hired Plaintiff Joan Ochei to work full-time as a Licensed Practical Nurse ("LPN") at MMWH. Plaintiff continued to be employed in this capacity until her employment was terminated effective December 3, 2007.

5.  As an LPN at MMWH, Plaintiff was responsible for providing quality nursing care to MMWH residents on whatever unit she was assigned to, and for overseeing the work of the Certified Nurse's Aides ("CNA") who worked on her unit. A copy of the job description for LPNs working at MMWH is attached hereto as "Exhibit A."

6.  As an LPN, Plaintiff's job duties were limited to those tasks that an LPN is authorized to do by virtue of the license issued to her by New York State. To the extent Plaintiff claims that during her employment at MMWH she performed the tasks of a higher credentialed Registered Nurse ("RN") outside of what her own LPN license permits, she had no authorization to do so. If Plaintiff had performed work outside the scope of her LPN license, Plaintiff would have subjected MMWH to significant potential liability.

7.  At no point during Plaintiff's employment—either at the time that she was hired or thereafter—did ArchCare (or any other entity) enter into a written contract of employment with Plaintiff.

8.  Attached hereto as "Exhibit B" is a copy of the Mary Manning Walsh Home Employee Handbook ("Handbook") that was in effect throughout Plaintiff's employment. The

following language is expressly stated under the title "EMPLOYEE HANDBOOK NOTICE" in the opening pages of that Handbook (Bates stamped page 00265):

> [T]his Handbook is not a contract of employment. Your employment is not for any specific period of time and may be terminated at your option or the Home's option. The Administration of the Home reserves the right to change or eliminate the policies covered by this Handbook or any other practice, program, plan or administrative guide from time to time as it deems appropriate.

9. A copy of the acknowledgement that Plaintiff signed on or about April 25, 2006 acknowledging receipt of the Handbook is attached hereto as "Exhibit C."

**Plaintiff's Disciplinary Record At MMWH**

10. Not long after Plaintiff was hired, ArchCare/MMWH began receiving numerous complaints against Plaintiff relating to her mistreatment of MMWH residents and staff.

11. For example, on or about November 16, 2006, I became aware that the week prior MMWH received a complaint from a CNA who worked with Plaintiff, claiming that Plaintiff had accused the CNA of blocking her path with a linen cart. Attached hereto as "Exhibit D" is a copy of this complaint and a "memo to file" that documents the steps MMWH took to address the situation.

12. To give another example, on or about December 19, 2006, MMWH received another complaint from a nursing supervisor that worked with Plaintiff, claiming that Plaintiff had refused to work her assignment on the 8th floor of MMWH and abandoned the unit. Attached hereto as "Exhibit E" is a copy of this complaint.

13. Yet another complaint was received by MMWH on or about January 5, 2007, alleging that Plaintiff refused to give medication to a resident in accordance with the prescribing doctor's order. Attached hereto as "Exhibit F" is a copy of this complaint.

14. Thereafter, on or about January 15, 2007, Plaintiff was suspended without pay for three days relating to what was determined to be her unprofessional behavior toward another nurse and a nursing supervisor. In the Disciplinary Action notice that was sent to Plaintiff advising her of this suspension (attached hereto as "Exhibit G"), Plaintiff was specifically informed: "You must work with your fellow co-workers in a professional manner without arguments. Any other infractions will result in further disciplinary actions up to and including termination from MMWH." Although Plaintiff grieved this suspension pursuant to the grievance procedure available to non-unionized MMWH employees, such as Plaintiff, the suspension was upheld at all stages of the grievance process. A copy of two letters sent to Plaintiff regarding her grievance are attached hereto as "Exhibit H."

15. In fact, on or about July 9, 2007, a number of CNAs that worked with Plaintiff submitted a petition to MMWH management against her relating to what they characterized as Plaintiff's "continuous abusive and unprofessional behavior." A copy of this petition is attached hereto as "Exhibit I."

16. Soon thereafter, on or about July 21, 2007, Plaintiff was again suspended without pay pending the completion of MMWH's investigation into various complaints against her, including the complaints raised in the petition filed by the CNAs and a complaint that Plaintiff had been taking pictures of and recording her co-workers. A copy of the suspension notice given to Plaintiff is attached hereto as "Exhibit J." Upon completion of the investigation, it was determined that Plaintiff had behaved in an inappropriate manner. Consequently, on or about August 21, 2007, Plaintiff was issued a final warning and was suspended for twenty days without pay as a penalty for her behavior. The written Final Warning and Suspension notice given to Plaintiff (attached hereto as "Exhibit K") on or about August 21, 2007 specifically stated:

> You are receiving the following final warning: your failure to meet the expectations noted above or any other infraction on your part will result in the termination of your employment at the Home.

17. Plaintiff subsequently grieved this twenty day suspension pursuant to the applicable grievance procedure. Although the basis for the suspension was upheld at all levels, as stated in the November 21, 2007 letter that was sent to Plaintiff (a copy of which is attached as "Exhibit L"), the suspension was ultimately reduced to a fifteen day unpaid suspension "based **solely** on the amount of time the Home took to investigate the incidents which led to the disciplinary action." (Emphasis in original). Notwithstanding this reduction, the final warning that was issued to Plaintiff on August 21, 2007 remained in full force and effect, and Plaintiff was so advised.

18. Thereafter, on or about December 3, 2007, MMWH received a written complaint from the daughter of a MMWH resident regarding Plaintiff's treatment of the resident and incident that occurred between her and the Plaintiff that day. A copy of this written complaint is attached hereto as "Exhibit M."[1] As detailed in that complaint, it was alleged that on or about December 3rd, Plaintiff had refused to give the resident pain medication and that Plaintiff behaved rudely towards the resident's daughter when she slammed a door in the daughter's face.

19. Upon receiving this complaint from the resident's daughter, MMWH undertook an investigation into what occurred on or about December 3, 2007 and suspended Plaintiff without pay pending completion of the investigation. After completing this investigation, MMWH determined that Plaintiff had, in fact, done what was stated by the daughter.

20. As a result of the final warning that had been issued to Plaintiff on August 21, 2007, and Plaintiff's mistreatment of the MMWH resident and the resident's daughter on December 3, 2007, Plaintiff's employment was terminated effective December 3, 2007.

---

[1] In order to protect the privacy of the resident, the last names have been redacted from the daughter's complaint.

95555.1

21. By letter dated December 21, 2007, I informed Plaintiff that her employment had been terminated effective December 3, 2007. Attached hereto as "Exhibit N" is a copy of my letter.

22. Although Plaintiff subsequently grieved her termination in accordance with the applicable grievance procedure, her grievance was denied and her termination upheld at all stages of the grievance process. A copy of the letter sent to Plaintiff regarding her grievance is attached hereto as "Exhibit O."

**Plaintiff's Complaints Of Unlawful Discrimination**

23. To my knowledge, Plaintiff did not make any statement or complaint to any Archcare/MMWH employee or representative about unlawful discrimination based on race or any other protected status, or retaliation at any time during her employment at MMWH.

24. I am aware that after Plaintiff's employment was terminated, Plaintiff contacted MMWH's Compliance and Corporate Ethics Hotline on January 9, 2008 and complained of alleged race-based discrimination. A copy of the "case details" notes maintained in the electronic record relating to Plaintiff's January 9, 2008 hotline complaint is attached hereto as "Exhibit P." To my knowledge, this is the first statement or complaint of unlawful discrimination or retaliation that Plaintiff made to any ArchCare/MMWH employee or representative.

25. On or about January 2, 2008, after Plaintiff's termination, I did have a conversation with Plaintiff during which she disputed her termination and requested to be reinstated to her former position as an LPN at MMWH. However, Plaintiff did not make any statement or complaint to me during this conversation about unlawful discrimination based on race or any other protected status, or retaliation. I subsequently received similar but different

letters dated January 10, 2008 from Plaintiff, wherein she reiterated her prior request for reinstatement. Copies of these letters are attached hereto as "Exhibit Q." It was in these letters dated January 10, 2008 that Plaintiff first advised me directly that she was going to file a complaint against her supervisors Lucas Dedrick and Louis Sampt based on, among other things, alleged "[e]mployment discrimination on basis of racially motivated prejudice" and "[r]etaliatory act." Plaintiff had not made any statement to that effect during our conversation on January 2, 2008.

### Investigation By the New York State Department of Labor

26. I am aware that after Plaintiff's employment was terminated, she filed a complaint with the New York State Department of Labor ("DOL") relating to wages that Plaintiff had not been paid but that she believed she was entitled to receive. ArchCare/MMWH was subsequently contacted by the DOL as part of an investigation into Plaintiff's complaint. Attached hereto as "Exhibit R" is a letter received on or about June 30, 2009 advising MMWH of Plaintiff's complaint. With the assistance of counsel, I was personally involved with ArchCare/MMWH's dealings with the DOL relating to Plaintiff's complaint.

27. ArchCare/MMWH cooperated fully with the DOL's investigation into Plaintiff's complaint. To my knowledge, no ArchCare/MMWH employee, agent or representative was uncooperative or refused to provide the DOL with the documents and information it requested.

28. I am aware that in or about September 2009, ArchCare/MMWH counsel had been advised by the DOL that it had concluded its investigation into Plaintiff's complaint and that based on its investigation the DOL determined that Plaintiff was owed a total of $1,266.32 in unpaid wages. By letter dated October 2, 2009 (a copy of which is attached hereto as "Exhibit

95555.1

S"), ArchCare/MMWH was also advised, in writing, of this determination and the amount the DOL determined was owed.

29. Accordingly, I made arrangements for ArchCare/MMWH to issue payment to the DOL to be forwarded to the Plaintiff for the entire amount the DOL determined was due to Plaintiff. *See* the check requisition form attached hereto as "Exhibit T." A check in the amount of $1,266.32 was subsequently sent by counsel, on behalf of ArchCare/MMWH, to the DOL in full satisfaction of the DOL's determination. Copies of counsel's letter and the check sent to the DOL are attached hereto at "Exhibit U."

WHEREFORE, the Defendants' motion for summary judgment should be granted in its entirety.

_____
Peter F. Hill

Sworn to before me this
13th day of December, 2012.

_____
Notary Public

SARAH D. STRUM
Notary Public, State of New York
Qualified in New York County
No. 02ST6071241
Commission Expires ~~March 14~~, 20 14
Apr 24